DAVID & LIA RENSIN,                        )
                                           )
    Plaintiffs,        )
                                           )
        v.        )
                                           )     1:09cv1391   (JCC)
JUNO-LOUDON, LLC., CREIGHTON               )
ENTERPRIES, INC., AND                      )
THE RITZ-CARLTON HOTEL                     )
COMPANY, LLC.,                             )
                                           )
    Defendants.        )

**M E M O R A N D U M    O P I N I O N**

      This matter is before the Court on Defendant Creighton
Enterprise's Motion to Dismiss or, in the alternative, for
Summary Judgment.  Plaintiffs' Complaint alleges a number of
causes of action against various Defendants relating to their
investment in a residential real estate property, that was part
of "The Ritz-Carleton Golf Club, Creighton Farms"
("Development").  Defendant Creighton Enterprises, Inc.
("Creighton") argues that a waiver clause contained in a 2009
Creighton Residential Cooperation Agreement bars any claims
against it.  This contract is not mentioned in the Complaint, as
both parties have had the opportunity to submit declarations and
counter-declarations this Court will consider evidence outside

1

of the Complaint and convert this Motion to one for Summary Judgment.

## I. Background

Plaintiffs, David and Lia Rensin, are married and reside in Virginia. (Compl. ¶ 9). Defendant Juno-Loudoun, LLC ("Juno-Loudoun") is a Delaware limited liability company in the business of developing and managing real estate and was a co-developer of the subdivision property once known as the Ritz-Carlton Golf Club, Creighton Farms, located in Loudoun County, Virginia, within the Eastern District of Virginia. (Compl. ¶ 10.) Defendant Creighton Enterprises, Incorporated ("Creighton") is a Virginia corporation in the business of developing and managing real estate and the construction of homes. (Compl. ¶ 10.)

On January 30, 2007, Plaintiffs entered into a "Lot Purchase Agreement" (the "Lot 31 Purchase Agreement") with for Lot 31, Section III of the Development for $1,150,000.00. (Compl. ¶ 75.) Pursuant to the Lot 31 Purchase Agreement, Plaintiffs paid to Creighton a deposit of $150,000.00 for Lot 31 (the "Lot 31 Deposit"). (Comp. ¶ 76.) On June 22, 2007, Plaintiffs signed a "Custom Home Construction" Agreement for Lot 31 ("Construction Agreement"). (Compl. ¶ 89.)

On March 31, 2009, more than two years after Plaintiffs purchased the Lots, the Rensins entered into the

"Creighton Residential Cooperation Agreement."  Creighton

submits a redacted version of this agreement with their Motion.

(Creighton's Mem. in Supp. of Mot. to Dismiss ("Mem. in Supp.")

at 1, Exhibits 1 & 2.)  The agreement was intended to "set forth

[the parties'] mutual intentions with respect to the ongoing

construction of the Residence and other matters related

thereto."  (Agreement, Ex. 2 ¶ 3.)

The Agreement also contains a waiver provision

stating: "the Rensins do hereby release Creighton from all

claims, demands, obligations and duties of every kind and

nature, known and unknown, except for those created and required

by this Agreement."  (Agreement, Ex. 2 at ¶ 3.)  Plaintiffs do

not dispute the authenticity of these submissions, nor do they

attach to their counter declarations or Memoranda any provisions

of the cooperation Agreement that might limit the scope of the

waiver or define the "claims, demands, obligations and duties"

that were "created" by the Agreement.  (Agreement, Ex. 2 at

¶ 3.)

Plaintiffs filed their Complaint on December 18, 2009.

(Dkt. 1.)  Defendant Creighton filed its Motion to Dismiss or,

in the Alternative, for Summary Judgment on January 29, 2010.

(Dkt. 11.)   Plaintiffs opposed on February 12 (Dkt. 23),

Defendant replied on February 17 (Dkt. 26) and a hearing was

held on February 19, 2010.  Both parties availed themselves of

the opportunity to file supporting affidavits and were aware of the potential for this Court to treat the motion as one for Summary Judgment.  (See Dkts. 23 and 26.)

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).  Where "matters outside the pleading are presented to and not excluded by the court," a 12(b)(6) motion may be converted to a motion for summary judgment.  Fed. R. Civ. P. 12(b).  In such an instance, the court is required to give all parties "reasonable opportunity to present all material made pertinent to such motion by Rule 56."  Fed. R. Civ. P. 12(b); *see also Plante v. Shivar*, 540 F.2d 1233, 1235 (4th Cir. 1976).  According to the Fourth Circuit, "reasonable opportunity includes some indication by the court to all parties that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or to pursue reasonable discovery."  *Plante v. Shivar*, 540 F.2d 1233, 1235 (4th Cir. 1976)(quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974)).

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

4

Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Triton Marine Fuels Ltd., S.A. v. M/V PACIFIC CHUKOTKA*, 575 F.3d 409, 412 (4th Cir. 2009)(holding that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.")  The party seeking summary judgment has the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v.* 477 U.S. at 248.  To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*. "In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial." *Kennedy v. Joy Technologies, Inc*., 269 Fed.Appx. 302, 308 (4th Cir. 2008) (citing *Maryland Highways Contractors Ass'n, Inc. v. State of Maryland,* 933 F.2d 1246, 1251 (4th Cir. 1991)) (noting that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.")  The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson,* 477

U.S. at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. Analysis

Creighton's argument is straight forward; indeed, it is only one paragraph long. Creighton argues that the waiver provision in the Cooperation Agreement bars the suit. (Mem. in Supp. at 2.) Under Virginia law, a court looks first to the plain meaning of an agreement: "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . ." *Berry v. Klinger*, 225 Va. 201, 208 (Va. 1983). "Ambiguity is created by the '[d]oubtfulness [or] doubleness of meaning . . . of an expression used in a written instrument.'" *Cascades North Venture Ltd. Partnership v. PRC Inc.*, 249 Va. 574, 579 (Va. 1995) (citing *Berry,* 225 Va. at 207). The language of the Agreement attached by Creighton states: "the Rensins do hereby release Creighton from all claims, demands, obligations and duties of every kind and nature, known and unknown, except for those created and required by this Agreement." (Ex. 2 at 3.) By its terms the language of the waiver is clear and bars all claims against Creighton Enterprises.

Unless Defendant can make some argument that the waiver is unenforceable as a matter of law, it clearly bars the

Plaintiffs' claims.  Plaintiffs oppose this Motion on four
separate grounds and the Court will address each of these in
turn.

Plaintiffs argue that the 2009 Cooperation Agreement
"had nothing to do" with the initial purchase of the Lots, thus
the Rensins believed that the conduct covered by the release
"involved only that pertaining to the construction and financing
of the home . . . ."  (Pls.' Opp. at 4; Affidavit of Lia Rensin
at ¶ 10; Affidavit of David Rensin at ¶ 11.)  Specifically, the
Rensins state that they "did not even know of the . . .
federally mandated protections in [the Interstate Land Sales
Full Disclosure Act] that they were denied."  (Pls.' Opp. at 4;
Affidavit of Lia Rensin at ¶ 11; Affidavit of David Rensin at ¶
12.)  The language of the release, however, plainly waives any
claims against Creighton, both "known and unkown" (Agreement,
Ex. 2 at 2 ("[Plaintiffs] do hereby release Creighton from all
claims, demands, obligations and duties of every kind and
nature, known and unknown . . . ."))  As stated by counsel at
oral argument, these are both sophisticated parties.  Plaintiffs
are both college graduates and were represented by the law firm
of Baker Botts, LLP. during the negotiations for the Cooperation
Agreement.  Plaintiffs do not cite to any case law requiring a
party to be made aware of every potential claim nor do they

raise any genuine issue of material fact as to the meaning of
the waiver clause.

Plaintiffs next argue that, Interstate Land Sales Full
Disclosure Act ("ILSFDA"), 15 U.S.C. § 1712, the statute under
which Plaintiffs bring Counts I-III, provides that "[a]ny
condition, stipulation, or provision binding any person
acquiring any lot in a subdivision to waive compliance with any
provision of this chapter of the rules and regulations of the
Secretary shall be void."  Plaintiffs support this argument by
citing to *Plaint v. Merrifield Town Center Limited Partnership*,
2009 U.S. Dis.t LEXIS 68113 (E.D. Va. 2009), where the court
found that "because ILSFDA does not permit a purchaser to waive
a developer's or developer's agent's ILSFDA duties . . ." a
Motion attempting to enforce the waiver "must be denied."  *Id.*
This case is inapposite, however, as the ILSFDA language applies
only to an individual "acquiring" a lot.  15 U.S.C. § 1712 ("any
condition . . . binding any person acquiring any lot in a
subdivision to waive compliance with any provision . . . shall
be void.")  The Agreement containing the waiver at issue was not
the Purchase Agreement.  Furthermore, the Cooperation Agreement
does not prospectively "waive compliance" but instead
retrospectively releases any other claims against Defendant
Creighton.  This argument is unavailing.

Plaintiffs next argue that the waiver does not apply as the Cooperation Agreement was signed to settle a dispute regarding the Construction Contract with Creighton and that Plaintiffs would never have entered into the Construction Contract had they not been fraudulently induced to enter the Purchase Agreement to buy into the Development. (Pls.' Opp. at 7.) In expanding this argument, Plaintiffs contend that these three contracts constitute one "Complete Contract" to buy a completed home within the Development and that this "Complete Contract" was fraudulently induced in violation of ILSFDA and thus "illegal" under the Act. (Pls.' Opp. at 7.) While, in Virginia, courts will not enforce illegal contracts, *Hancock Co. v. Stephens*, 177 Va. 349 (Va. 1941), the Court rejects the notion that these three independent agreements constitute one "contract." As the Plaintiffs have offered no allegations or any facts upon which this Court could conclude that the Cooperation Agreement itself was fraudulently induced,[1] it is not considered "illegal" under ILSFDA thus enforceable. Furthermore, as Defendant argues, the Cooperation Agreement, signed two years after the other agreements, has been in force

---

[1] The Court notes that the Plaintiffs do not allege or argue that they were falsely induced to enter into the Cooperation Agreement directly, thus this Court need not address the effect of waiver clauses in fraudulently induced contracts. See *George Robberecht Seafood, Inc. v. Maitland Bros. Co.,* 220 Va. 109, 111 (Va. 1978).

and provided significant financial benefit to the Plaintiffs over the past year.

Plaintiffs finally contend that the Cooperation Agreement lacks consideration from Defendant Creighton as it is "derivative of the illegal purchase agreement." (Pls.' Opp. at 7.) As the Court found above, the Cooperation Agreement stands on its own, was entered into knowingly and freely by the Plaintiffs who are well educated and had the benefit of competent counsel. The language of the release is clear and unambiguous: Plaintiffs waived all claims "both known and unknown" against Creighton in order to secure the Cooperation Agreement. The language of the release controls.

## IV. Conclusion

For the reasons stated above this Court will grant Defendant Creighton Enterprises' Motion for Summary Judgment.

An appropriate Order will issue.


|  | /s/ |
|---|---|
| March 17, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |